May it please the Court, Charles Bonneau, appearing for Appellant and Petitioner, Darryl Farris. Your Honors, this appeal has to do with the defendant's right to confrontation in a state court trial. The question is whether the appellant was properly convicted of multiple sex offenses on women who claimed that they were not prostitutes, where he claimed that they were prostitutes, and where the witness's prior conviction for prostitution was excluded under the Rape Shield Law. Isn't the real question that your client was entitled to inquire about was whether they were in the game that night? Were they acting as prostitutes or were they just accepting a ride? Well, that was probably the major implication, yes. It's also got some... But he was allowed to question on that. He was. And they all denied it. That's the important thing. The state courts seemed to feel it was real important that he'd been allowed to question them, and he was. But what he wasn't allowed to do was determine that they were lying. And that frames the issue that we're presenting today. Well, the jury heard a lot of testimony with regard to the fact that these were stroll areas. They were allowed to testify or to inquire as to whether or not they were actually engaged in acts of prostitution on the evening in question. What you're really complaining about is, at least with regard to the first victim, that you couldn't establish that she had a prior conviction for prostitution and that you weren't allowed to ask her about her price list. Was there anything else that was excluded? That was what was excluded. And it is true that the jury heard evidence that was suggestive that these were prostitution encounters. However... I mean, you had expert testimony, did you not, from the investigator who's a former police officer who I assume said, I used to work this beat and this is an area of prostitution? There was a pretty suggestive case, as we've set forth in our brief, that these were prostitution encounters. But there's a big difference between suggesting something and proving it. And the defense had to raise a reasonable doubt as to consent, and the prosecution had to prove a lack of consent. And the prosecution never conceded the issue. They did not concede that these people were prostitutes. To this day, they are defending the privacy of these individuals to protect these individuals from any allegation that they were prostitutes. But we've got a legislative determination in the form of a rape shield statute that you're up against as well, are you not? The state legislative determination has to be weighed against the confrontation privilege. And according to the United States Supreme Court, this court has to weigh the state's interest in protecting these people's privacy. Now, had this... Actually, we determine whether or not the California Court of Appeal, Hill's decision doing that weighing was contrary to or an unreasonable application of Federal law. So we defer to the California Court of Appeal's determination unless it was unreasonable. Yes. So tell us why that decision was unreasonable. It was unreasonable because the state doesn't ever protect the privacy rights of alleged prostitutes, except in this context. These people are hunted down, arrested. They are brought into court and tried publicly. And you can put their names into the Internet. But they're victims at this point, and that's what the rape shield law was designed to do, is to not put the victims on trial when there's a rape charge. That's true. This court has reviewed the California rape shield law and other rape shield laws in the context of minor victims that have never been arrested for anything, that have a legitimate right to privacy. The state, in some alternative universe, could protect the privacy rights of prostitutes, you know, have some form of regulation or some way in which they are decriminalized. But they don't. In fact, they publicize it. But I hear you arguing that if a prostitute is a victim, the prostitute should be treated differently because she is not innocent in terms of sexual activities. Is that your argument? The case that you have, where you have a case where the defendant says that there was a consensual encounter and the victim says, no, it wasn't consent, the defendant says, well, weren't you prostituting that night? She says, no, aren't you a prostitute? Isn't this a prostitute area? No, no, that's not what I was doing. I was out playing pool. You got to do all of that. That was all ñ that all came into the record. You got ñ you got ñ we got to ask all the questions. All the answers were no. And so there was ñ there was a complete denial. The prosecution never conceded that these people were prostitutes. And now on appeal, for the first time, they are saying, well, you know, it's real important to protect the privacy of these people. I say the first time. They would never have done that if they were prosecuting them. Is it privacy or past sexual behavior? And I have the same concern that Judge Rawlinson does. I don't think you're arguing that prostitutes can't be the victim of rape, are you? No, no. So then the question becomes, under the Rape Shield Law, how far does the inquiry have to go before it violates the legislative determination that the victim's past sexual behavior is not admissible in order to establish the question of consent? Once the victim's credibility is an issue, and we're not talking about smearing her reputation, but we're talking about questioning her credibility, even for the minor victims who have no criminal record, that we are entitled to inquire. And the Court has held that over and over. And this Court has not confronted a case where the alleged victim is a prostitute. And what has to be determined is how weighty is the State's interest, really, in this situation? But is it? But the same argument could be made of any victim who had previously engaged in any form of sexual activity. The whole purpose for admitting prior sexual behavior is to show that if she did it before, then she must have consented to do it on the night of the crime. And that's the legislative determination under the Rape Shield Law, that you don't get to prove consent that way. No. Non-prostitute cases are completely different. A person who has no criminal record has a legitimate right to privacy, and the State has a legitimate right to protect that. Even if she is the loosest woman you could find. Even if she's the loosest woman that you could find. But you still don't get to inquire or establish that. You still don't get to establish it. The situation changes 180 degrees when she has gone into criminal activity because the State has forfeited any supposed right to protect her privacy. They have publicized it. Go ahead. Tell me what clearly established Supreme Court law supports that argument, that if someone has been prosecuted for and convicted of prostitution, that the State's interest in protecting the victim of rape is lessened. What Supreme Court law are you relying on to support that argument? Michigan v. Lewis directs this Court to take each case, each scenario, in which the State asserts a privacy interest and to weigh that against the confrontation. But didn't the court of appeals do that? They cited to the Michigan decision. I don't think they did. And if they did, they were wrong. It was unreasonable. But we can't say it's wrong. We can't. Even if we disagree with the way the California court of appeals struck the balance, we can't. That's not a basis for overturning the decision unless it was objectively unreasonable. That's a very high standard. It's an unreasonable application, and it meets the high standard where the activity has already been prosecuted by the same people who now say that it's private. Now, here, there were three different incidents, three different women, each claiming that they're victims. Now, this wasn't some scheme where these women knew each other. It was all independent events. Is that not right? Well, the defense actually had a claim that they had talked to each other. Say that again. The defense claim was that there was a scheme on the stroll to accuse this man. Any evidence of it that was in the record? Well, there was testimony. They tried to raise that. I think the real question is whether Ms. L. was truthful when she denied her activity and whether that would have then had a house of cards effect with regard to the other victims. Thank you. We'll hear from the State now. Good morning. May it please the Court. Justin Riley on behalf of the Respondent. I'd like to point out something preliminarily that the district court found. There are three victims in this case and appellant only exhausted his claims with regard to confrontation for Alicia L. only. And the district court found that with regard to the other two victims, the claims were unexhausted and we do not waive those claims. I'm sorry. We don't waive exhaustion as to those claims. I would love to answer any questions that the panel has. As I understand Mr. Bonneau's argument, his chief concern is the exclusion of the evidence of Alicia L.'s prior 647B conviction and her price list, right? That's right. Okay. So it would only – So I'm not sure how far the procedural bar gets you if that's the thrust of his confrontation clause, are you? Well, remember that there were three victims and so the conviction carries counts with regard to the other two complaining witnesses as well. Well, but I assume that had that evidence been admitted, he would have tried to use the admission as to Alicia L. to show that all three were prostitutes because if she was a prostitute working in this area, then the other two must have been hookers too. I think that's just as far a stretch as the rest of the argument. That's the defense. There was no evidence at all of any of that. All right. I'd be willing to submit – I'm sorry. I think the thing that is troubling in this case is the government's contention that because an individual is a prostitute that they can't just be an ordinary citizen on an ordinary night. Questions were allowed as to what went on that night and it seems to me that they shouldn't be able to go any farther and that the government shouldn't try to push it. Well, I agree. I don't think the government was trying to – the defense was the one trying to push the extra – the questioning. And there was a severe amount of evidence let in regarding whether or not these particular victims were prostitutes. As Judge Tallman mentioned, there was evidence that the area where they were found, where they admitted to be, was a stroll area. They were out at times of night with sketchy explanations for why they were out, all sorts of things like that. So this was a very reasonable, very rational limitation on Fishner's right to confrontation. Was the State's – I assume the State's theory was that this was a serial rapist of prostitutes, right? That's what was argued or no? The prosecutor didn't come out and say that these victims were prostitutes, but he did say it doesn't really matter if these victims were prostitutes at all. Okay. So it was the defense who was trying to get in the – I don't know what you'd call it. It would be the hearsay within the prostitute community in this area that there was a guy who was picking up prostitutes and – It was a rather convoluted scheme, and I think convoluted is the State Appellate Court's words for this particular defense. But I think the way the defense worked was there was this particular prostitute, I can't remember her name, 15 miles away. She worked a stroll 15 miles away from this particular stroll, and she had some sort of beef with an African-American male, and Petitioner is an African-American male, and the prostitutes on this stroll, 15 miles away from the other stroll, were talking to each other. There was absolutely no evidence of that. They actually brought in Alicia L. and the fourth prostitute, and Alicia L. didn't recognize the prostitute at all, didn't know who she was, had never talked to her, that sort of thing. Unless there are any other questions. I think not. Thank you. Thank you, counsel. The case that's argued is submitted.
judges: Fletcher B. , Tallman, Rawlinson